THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| DONNA GERMON, as Administrator | * | |
| of the Estate of Rachel M. Germon, | * | |
| and as surviving parent of | * | |
| Rachel M. Germon, | * | |
| | * | CIVIL ACTION FILE No. |
| Plaintiff, | * | 4:23-cv-00100-WMR |
| | * | |
| v. | * | |
| | * | |
| STEPHEN R. BOYD, SR., | * | |
| *et al*. | * | |
| | * | |
| Defendants. | * | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND SUPPORTING MEMORANDUM [1]

Defendants' Counterclaims assert that decedent Rachel Germon entered into binding contracts whereby she waived any right to sue Defendants in the event she died while parachuting and agreed to indemnify Defendants if such a suit were filed. Defendants' Counterclaims allege Plaintiff breached those agreements by filing this action after Rachel Germon died while parachuting and is therefore liable for damages suffered by Defendants. Plaintiff has moved to dismiss Defendants'

---

[1] The term "Defendants" as used herein shall refer to Air Support, Inc., Stephen R. Boyd, Drop Zone Management, Inc., Capital Air Park, Inc., Performance Plus, Inc., S.M.E. Properties, LLC, Desert Eagle Aviation, Inc., Desert Sand Aircraft Leasing Co., and B&B Aviation, LLC.

Counterclaims for allegedly failing to state a claim upon which relief can be granted, contending that the subject contractual provisions are unenforceable as written, and that Plaintiff was not a party to the agreements and thus cannot be liable for breach of contract in her capacity as surviving parent of Rachel Germon.

At the motion to dismiss stage, the Court is required to accept as true all well-pled factual allegations contained in Defendants' Counterclaims. Based on those, Defendants have stated viable and proper claims for breach of contract against Plaintiff, and therefore this Court should deny Plaintiff's motion to dismiss.[2]

### STATEMENT OF FACTS

This case arises from a parachuting accident in which plaintiff's decedent, Rachel Germon, died. Defendants filed Amended Counterclaims on August 7, 2023, which involve certain waiver agreements executed by Rachel Germon prior to the accident. (ECF 67-75.)[3] Defendants allege that on May 22, 2022, prior to her parachute jump, Rachel Germon read and signed several documents, including two

---

[2] Notably, Plaintiff's contention that the subject waiver agreements are not enforceable pertains only to Defendants' Counterclaims for breach of contract. Plaintiff's motion to dismiss has no bearing on, and cannot affect or prejudice, Defendants' ability to use any or each of the agreements executed by Rachel Germon to support their defenses to Plaintiff's claims, including, but not limited to, assumption of the risk. Plaintiff expressly acknowledges this distinction. ECF 78, p. 23.

[3] For ease of reference and since each of the Amended Counterclaims is identical, additional references in this Brief will be made to ECF 75 only.

that contain exculpatory waivers.  (ECF 75, ¶16.)[4]  One is the "Agreement, Waiver and Release of Liability and Assumption of Risk",[5] which Rachel Germon signed in three places and initialed 23 times.  *Id.*, ¶¶ 24, 26, Exh. 1 thereto.  The second is the Uninsured United Parachute Technologies, LLC Tandem Parachute Jumper Agreement ("UUPT").[6]  *Id.* at ¶ 42, Exh. 1 thereto.

Defendants' Counterclaims allege, and Plaintiff does not contest, that Rachel Germon placed her initials next to paragraphs 7, 8, and 14 of the SSA, among others. (ECF 75 ¶ 36, 39-40.)

---

[4] The agreements were copied and printed as one document and are attached as Exhibit 1 to the Amended Counterclaims.  ECF 75., Exh. 1.

[5] In her motion, Plaintiff uses the abbreviation of "SSA" to refer to the "Agreement, Waiver and Release of Liability and Assumption of Risk".  For ease of reference, Defendants will utilize that same abbreviation, SSA, herein.

[6] Defendants' Counterclaims allege that in addition to breaching the SSA, Plaintiff breached the UUPT by initiating this action.  ECF 75 ¶¶ 78-80.  In her brief, Plaintiff argues that the UUPT applies only to jumps involving a "tandem parachute system," that Rachel Germon was not using a UUPT tandem system during the jump at issue, and therefore Plaintiff did not breach the UUPT by initiating this action.  ECF 78 at 6-7.  For purposes of this response, and without waiving any right to refer to and use the UUPT other issues including, but not limited to, establishing assumption of the risk, Defendants withdraw the portions of their Counterclaims that are based solely on the UUPT.

Paragraph 7 as initialed is set out below in full:

7.  I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless "SKYDIVE SPACELAND ATLANTA" and all "Released Parties" from any and all claims, demands, or causes of action, which are in any way connected with my participation in Skydiving-Related Activities or my use of "SKYDIVE SPACELAND ATLANTA'S" equipment of facilities, including any such claims which allege negligent acts or omissions of "SKYDIVE SPACELAND ATLANTA" and/or "Released Parties". It is my understanding and intention that this Agreement, Release of Liability and Assumption of Risk be binding not only on myself, but also on anyone or any entity that may be able to or does sue "SKYDIVE SPACELAND ATLANTA" and/or "Released Parties" because of my injury, death, or other hazard or damage. IT IS FURTHER MY UNDERSTANDING AND AGREEMENT THAT THIS DOCUMENT IS INTENDED TO AND DOES IN FACT RELEASE "SKYDIVE SPACELAND ATLANTA" AND ALL OTHER "RELEASED PARTIES" FROM ANY AND ALL CLAIMS OR OBLIGATIONS WHATSOEVER, FORESEEN AND UNFORESEEN, CONTEMPLATED OR NOT CONTEMPLATED, ARISING IN ANY WAY FROM MY PARTICIPATION IN SKYDIVING-RELATED ACTIVITIES, EVEN IF CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF "SKYDIVE SPACELAND ATLANTA" AND/OR "RELEASED PARTIES."

Paragraph 14 as initialed is set out below in full:

14.  BY SIGNING THIS DOCUMENT, I ACKNOWLEDGE THAT IF I AM HURT OR KILLED, OR IF I SUFFER HEDONIC, PSYCHOLOGICAL, EMOTIONAL, OR ECONOMIC INJURY, OR MY PROPERTY IS DAMAGED DURING MY PARTICIPATION IN THESE SKYDIVING-RELATED ACTIVITIES, I WILL BE FOUND BY A COURT OF LAW TO HAVE WAIVED MY RIGHT TO MAINTAIN A LAWSUIT AGAINST "SKYDIVE SPACELAND ATLANTA" AND/OR "RELEASED PARTIES", AS THOSE TERMS ARE DEFINED HEREIN. I FURTHER UNDERSTAND, AGREE AND CONSENT TO THE INTRODUCTION OF THIS AGREEMENT INTO EVIDENCE TO BE PUBLISHED TO THE JURY OR OTHER FACT FINDER IN ANY TRIAL WHICH MAY RESULT FROM ANY CLAIM OR LAWSUIT BROUGHT BY ME OR ON MY BEHALF AGAINST "SKYDIVE SPACELAND ATLANTA" OR ANY OTHER "RELEASED PARTY."

Paragraph 8 from the SSA as initialed is set out below in full:

8.  Should "SKYDIVE SPACELAND ATLANTA" AND/OR "RELEASED PARTIES" or anyone acting on their behalf be required to incur attorney's fees and costs to enforce this agreement in any way, I agree to indemnify and hold them harmless for all such fees and costs.

Defendants' Counterclaims further allege that after signing the SSA and other agreements, watching the tandem vector waiver video, undertaking additional training, and a completing a written test, Rachel Germon voluntarily made the decision on May 22, 2022, to undertake the solo parachute jump that resulted in her death.  (ECF 75 ¶¶ 53, 57-58, 63-76.)

On May 17, 2023, Plaintiff filed this lawsuit against Defendants seeking damages arising from Rachel Germon's death. (ECF 1; ECF 75 ¶ 77.)  Defendants' Counterclaims allege that Plaintiff's laundry list of factual allegations of fault against Defendants set forth in the Complaint sound in simple negligence as opposed to gross negligence.  (ECF 75 ¶ 78.) Those allegations include that Defendants:

- "Fail[ed] to exercise reasonable care in providing skydiving activities to Ms. Germon".

- "Fail[ed] to employ qualified instructors, pack riggers, inspectors and flight operators".

- "Fail[ed] to adequately train Austin Dailey or fail[ed] to ensure that he was adequately trained".

- "Fail[ed] to use safe equipment for the performance of its skydiving operation services".

- "Fail[ed] to sufficient train Ms. Germon in skydiving equipment preparation,

5

inspection, or operation procedures".

- "Fail[ed] to adequate train Ms. Germon in the safe performance of skydiving jumps".

- "Fail[ed] to rig Ms. Germon's skydiving equipment adequately" .

- "Fail[ed] to inspect Ms. Germon's skydiving equipment adequately".

- "Fail[ed] to develop, promulgate, or enforce equipment safety procedures".

- "Fail[ed] to recognize that it had not adequately rigged, packed, installed, or activated the skydiving equipment it provided to Ms Germon"

- "Fail[ed] to warn Ms. Germon that the AAD could fail to deploy the reserve parachute when the display indicates that it successfully activated".

- "Fail[ed] to wear appropriate clothing for the jump".

- "Altering the parachute pack in a manner that is not specifically authorized by the FAA or the parachute pack's manufacturer".

- is vicariously liable for the instructor's various alleged "failures".

(*Id.* at ¶ 79; *see* ECF 1 at ¶¶ 226-227.)

Defendants' Counterclaims allege that by signing the SSA, Rachel Germon expressly (1) waived any right to sue Defendants in the event she was injured or killed while parachuting, even if her death was proximately caused by the negligence of Defendants (ECF 75 ¶¶ 78-80); (2) agreed to indemnify and hold Defendants

harmless and to pay Defendants' attorney's fees and costs if Defendants had to defend themselves against any such claims resulting from her death (ECF 75 ¶¶ 78-83); (3) acknowledged that the SSA was binding not only on herself but also on any person who may file suit as the result of her death (ECF 75 ¶ 81); and (4) breached the SSA by filing this action (ECF 75 ¶ 90). Defendants' Counterclaims allege that they have suffered damages as a result of Plaintiff's breach. (ECF 75 ¶ 91.) As a result, if Defendants show, after having conducted the necessary discovery to challenge Plaintiff's factual allegations, that one or more of Plaintiff's claims sound only in simple negligence, then Plaintiff will be liable to Defendants for breach of contract, and Defendants will be able to recover their attorneys' fees, expenses, and other provable damages caused by Plaintiff's breach.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Standard for Motions to Dismiss Generally

Under Fed. R. Civ. P. 12(b)(6), the Court must accept the Defendants' counterclaim allegations as true and must construe them in the light most favorable to Defendants. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Watts v. Fla. Int'l Univ.*, 495 F 3d 1289, 1295 (11th Cir. 2007). Dismissal is only appropriate when "no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F 2d 1171, 1174 (11th

Cir. 1993). The Court should only dismiss a claim if it has not been plead with enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. vs. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not a "probability requirement," but it merely requires something more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft vs. Iqbal*, 556 U.S. 662, 678 (2009). As conceded by Plaintiff, this low bar requires only that the allegations in Defendants' Counterclaims "raise a right to relief above the speculative level". *Twombly*, 550 U.S. at 555. Further, under Fed. R. Civ. P. 8(a)(2), Defendants are only required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief", and under Rule 8(e), "[p]leadings must be construed so as to do justice." Therefore, in evaluating Plaintiff's motion to dismiss, this court must accept Defendants' factual allegations as true, and Defendants need only provide a short and plain statement of their claim to survive the motion.

## II.     Defendants' Counterclaims Properly Plead Breach of Contract Against Plaintiff.

Plaintiff mentions generally in her "Introduction" that Defendants have not properly alleged a breach of contract claim (*see* ECF 78, p. 4), but there is no discussion to support that argument in the body of her motion aside from a single footnote (*id.* at p. 24, n. 19.). Plaintiff does not even mention the elements to establish a breach of contract claim in Georgia; she simply makes the bare assertion

that Defendants' counterclaims fail to do it.   Nevertheless, since her motion purports to contend that the counterclaims do not assert a cognizable claim, Defendants will address the issue.

"The elements of a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complaint about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting *Norton v. Budget Rent a Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010)).   Courts routinely hold that a breach of contract claim is sufficiently pled and survives a motion to dismiss challenge where the pleading party incorporates by reference the contracts at issue and cites the provisions allegedly breached.   *See, e.g.*, *Coca-Cola Fin. Corp. v. Pure Tech Plastics, LLC*, 2012 U.S. Dist. LEXIS 207503, Civil Action No. 1:12-cv-00949-SCJ (N.D. Ga. Oct. 24, 2012) (breach of contract claims found to meet Rule 8 pleading requirements); *Bowers v. Branch Banking & Trust Co.*, 2015 U.S. Dist. LEXIS 88298, Civil Action No. 4:15-CV-0011-MTT (M.D. Ga. July 8, 2015) (attaching agreement to complaint and clearly identifying terms allegedly breached sufficient to survive motion to dismiss for failure to state a claim).

Plaintiff could only muster one district court case to support her baseless position that the allegations are insufficient.  In that case, the Court held that the defendant's breach of contract claim was not properly plead because it failed to allege there was any binding contract between the parties at all; instead, the defendant was attempting to rely on a copy of the plaintiff's policies that were never signed or assented to by the defendant.  *Kellogg*, 1:18-CV-1929-MHC, 2019 WL 13245096 at \*10-11.  The defendant in *Kellogg* also failed to state how the plaintiff breached the supposed agreement or how it had been damaged by the supposed breach.  *Id.* at \*11.

Here, Defendants' Counterclaims allege far more than the required short and plain statement to satisfy federal pleading rules.  Defendants have attached a complete copy of the SSA and other agreements to their Counterclaims and incorporated them by reference.  (ECF 75, ¶ 16, 53, 78-92, Exs. 1 and 2 thereto.) Defendants also allege that Rachel Germon read and signed all 4 agreements, including the SSA, in consideration for making her jump.  (*Id.* at ¶ 16.)  Defendants then point to specific contractual provisions that Plaintiff has allegedly breached by initiating this action, including:

- SSA Paragraphs 14 and 15, whereby Rachel Germon expressly released and discharged Defendants from any liability resulting from any injury or death she

10

suffered from the jump, (*id.* at ¶ 37), and waived the right to sue Defendants in the event she died from parachuting (*id.* at ¶ 36);

- SSA Paragraph 7, whereby Rachel Germon agreed to release, discharge and indemnify Defendants from any claims that may result from her skydiving-related activities, (*id.* at ¶ 39), and agreed that the SSA covenants would be binding not only on herself, but also on any other person or entity who may attempt to sue Defendants because of her death (*id.*); and

- SSA Paragraph 8, whereby Rachel Germon agreed never to institute any suit against Defendants as a result of the parachuting event and to indemnify Defendants if they were required to incur attorney's fees in defending a suit. (*Id.* at ¶ 40.)

The Counterclaims further allege Plaintiff filed this suit seeking damages arising from Rachel Germon's death, (*id.* at ¶ 77); that the Complaint alleges facts and legal theories, such as Defendants "failed to exercise reasonable care", that sound in simple negligence (*id.* at ¶¶ 78-79); that Plaintiff breached the SSA by filing this lawsuit (*id.* at ¶ 90); and that Defendants have suffered monetary damages from having to defend the lawsuit, including but not limited to attorneys' fees, expert witness fees, and investigator costs (*id.* at ¶ 91). Thus, Defendants' Counterclaims

are replete with factual allegations more than sufficient to establish their breach of contract claims and survive a motion to dismiss challenge.

### III.   The SSA's Exculpatory Clauses are Binding under Georgia Law.

Under Georgia law, contractual waivers and exculpatory clauses are recognized as binding contracts and are not void as against public policy. *Neighborhood Assistance Corp. of Am. v. Dixon*, 265 Ga. App. 255 (2004).   In *Dixon*, the Georgia Court of Appeals stated as follows:

> It is the paramount public policy of this State that Courts will not lightly interfere with the freedom of parties to contract.  A contracting party may waive or renounce that which the law has established in his or her favor when it does not thereby injure others or affect the public interest. Exculpatory causes in Georgia are valid and binding and are not void as against public policy when a business relieves itself from its own negligence.

265 Ga. App. at 460-61.  "A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law." *Hall v. Garden Servs.*, *Inc.*, 174 Ga App 856, 858 (1985).  The Georgia General Assembly has not enacted any law prohibiting contractual waivers or exculpatory provisions in any contract pertaining to parachuting.

12

Of course, exculpatory clauses do not relieve a party from liability for acts of gross negligence or willful or wanton conduct.  *McFann v. Sky Warriors, Inc.*, 268 Ga App. 750, 758 (2004).  Critically, however, "when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury."  *Id.* at 758 (quoting *Colonial Props. Realty v. Lowder Constr. Co.*, 256 Ga App. 106, 113 (2002)).

In *McFann*, the defendant, Sky Warriors, was in the business of taking passengers for aircraft rides involving simulated aerial combat.  268 Ga. App. at 750.  The plaintiff's decedents executed contracts exculpating Sky Warriors from liability and were later killed when a Sky Warriors' aircraft's wing detached from the plane during flight.  *Id.*  The plaintiff alleged that Sky Warriors was grossly negligent by selecting a 40-year-old aircraft with extremely high airframe time and a high probability of serious airframe fatigue failures, and because it failed to perform proper maintenance.  As noted by the plaintiff, per federal regulations an airplane with a fatigue crack in a wing spar is not airworthy unless it is inspected and repaired in accordance with manufacturer's recommendations.  Despite finding another of its planes to be damaged from fatigue and x-rays showing that at least two other of its

13

planes had cracks in their wing spars, Sky Warriors never had engineers determine whether its planes were airworthy, but instead allowed ordinary aircraft mechanics to make that assessment. *Id.* at 759. Even though the plaintiff denominated the allegations as gross negligence, the court held that whether Sky Warrior's conduct constituted simple negligence, gross negligence, or willful and wanton conduct was a factual determination that must be resolved by the jury. *Id.*

Likewise, in *Lowder Construction Co*. the plaintiff alleged that the defendant was grossly negligent by failing to adhere to building construction blueprints, which led to a fire. 256 Ga. App. 106 (2002). As in *McCann*, the court held that whether the defendant was grossly negligent as alleged in the complaint by failing to adhere to the blueprints was a question that had to be resolved by the jury and not the court. *Id.* at 113. *See also Currid v. Dekalb State Ct. Prob. Dep't*, 274 Ga. App. 704, 709 (2005).

Thus, under Georgia law, this Court cannot decide as a matter of law at this initial pleading stage whether Germon's allegations of fault against Defendants constitute claims of simple or gross negligence. Under established Georgia law, the jury must make that determination, and if any one or more of Plaintiff's allegations of fault against Defendants constitutes a claim of simple negligence, she will be found to have breached the SSA by filing this lawsuit.

14

**IV**.     **The SSA's Exculpatory Clauses are Prominent, Clear, and Unambiguous.**

Plaintiff acknowledged in her Complaint that Rachel Germon read and signed the SSA.  (ECF 1, ¶ 70.)   In fact, Rachel Germon signed the SSA in three places and initialed 23 separate paragraphs on May 22, 2022, the date of the accident.  (ECF 75, ¶ 26.)  Faced with those unavoidable facts and with the expectation that many or all of Plaintiff's factual allegations against Defendants will, after discovery has been conducted, turn out to be claims that sound only in simple negligence, Plaintiff has taken the only avenue possible to try to avoid having her claims barred as a matter of law: she contends that the signed waivers are unenforceable because the waiver language is confusing.   In doing so, she contends both that there is too little prominent language and then that there is too much.  (ECF 78, pp. 16, 18.)

First, Plaintiff's contention that there are multiple definitions of "Skydiving - Related Activities" and "Skydive SpaceLand Atlanta" conveniently ignores that those two sets of definitions are contained in different agreements.  What she calls the first definition of "Sky Diving – Related Activities" is set forth in the "Representation of Medical Fitness" agreement, and what she calls the second definition is in the separate SSA agreement.  The same is true for the two definitions of "Skydive SpaceLand Atlanta".  The "Representation of Medical Fitness" and SSA each have their own title, introductory language, terms and provisions, and signature

15

lines.  (ECF 75, Exh. 1.)   Thus, each agreement has only a single governing definition for "Skydiving – Related Activities" and "Skydive Spaceland Atlanta". (*See id*.)

Regardless, even if those definitions were part of the same agreement, a review of the definitions reveals no meaningful differences. Both definitions of "Skydiving – Related Activities" contain the following exact list of terms: "parachuting, ground instruction, flying or riding an aircraft, skydiving, free fall jumping, tandem jumping, and experimental test parachute jumping". (*Id.*, Exh. 1, p. 1.) The only difference is that the first definition concludes with "and all related activities", and the second definition delineates those other related activities as "experimental canopy deployment and flight, riding on buses on shuttles, and merely being on premises where such activities are conducted". *Id.* The definitions are, for all relevant purposes, identical and clearly synonymous.

For the same reason, the definitions of "Skydive SpaceLand Atlanta" are synonymous.  One definition is "Skydive SpaceLand Atlanta and its successors, assigns and related entities", and the second definition simply lists those related entities. *Id.* What Germon refers to as the third definition of "Skydive SpaceLand Atlanta is not a definition at all, but rather a reference to the prior definitions of "Skydive SpaceLand Atlanta" and "Released Parties". *Id.*

16

Second, Plaintiff's attempts to attack the exculpatory waivers in paragraphs 7 and 14 of the SSA as not being sufficiently prominent is equally unconvincing when the actual language of the SSA is reviewed.  Plaintiff argues courts consider factors such as whether the clauses are contained in a separate paragraph, have a separate heading, or have distinguishing features such as font size.  (ECF 78, p. 16.)  However, a review of the SSA's Paragraphs 7 and 14 reveals that the relevant exculpatory language is set forth in separate paragraphs and in a font that is all caps, bold print, and underlined.  (ECF 75, Exh. 1 at p. 3.)  The paragraphs stand out as they are between paragraphs 6, , and 13, and 15, respectively, which do not have provisions in all caps, bold print, and underlined.  Moreover, paragraphs 7 and 14 were individually initialed by Rachel Germon on the day of her jump.  Therefore, the exculpatory clauses contain the requisite emphasis that Plaintiff contends is desired and required by Georgia courts.  Thus, the two exculpatory clauses are prominent, clear, and unambiguous, and therefore enforceable.

Third, Plaintiff's argument that the exculpatory clauses are buried in the agreement and Ms. Germon could not have understood what she was releasing defies all reason.  It is inconceivable that Rachel Germon could have read the SSA, signed it in the three places indicated, and initialed each specific paragraph without knowing beyond any shadow of a doubt that she was waiving any claims for

negligence if she were killed against Skydive SpaceLand Atlanta and any related companies who were involved in any way with her parachute jump. Indeed, the very title of the agreement is **"AGREEMENT, WAIVER, AND RELEASE OF LIABILITY &ASSUMPTION OF RISKS"**. (*Id.*) Moreover, at the end of the SSA, Ms. Germon signed under the sentence that reads: "I also understand and acknowledge that by signing these documents, I am giving up important legal rights." (*Id.* at p. 4.)

The cases Plaintiff cites in support of her position that the SSA is unenforceable are materially distinguishable and irrelevant. *Dataforensics, LLC v. Boxer Property Management*, 361 Ga. App. 311 (2021) involved a limitation of liability provision in a real estate lease barring recovery of consequential damages. The limitation of liability language was the same font size as that used throughout the entire lease, and, unlike the provisions signed by Ms. Germon, was not capitalized, italicized, or set in bold print. 361 Ga. App. at 320. The Court of Appeals held that the trial court erred in granting summary judgment to the defendant based on that provision, leaving the enforceability of it to the jury. *Id.* at 321.

Plaintiff's reliance on *Hitech Rail v. Cambridge Swierton Builders*, 363 Ga. App. 226 (2022), is also misplaced. That case involved a dispute between a commercial general contractor and its subcontractor, and the exculpatory provision

18

was in the same font as that used throughout the contract and placed in a paragraph entitled "Termination", which title had nothing to do with the subject provision. *Id.* at 230. Similarly, in *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 611, 612 (2001), the exculpatory provision in a commercial lease was in the same font as the surrounding language and was contained in a paragraph labeled "Miscellaneous". Finally, *Monitronics International, Inc. v. Veasley*, 323 Ga. App. 126 (2013) involved a home security contract, and the $250 limitation of liability provision was placed in the same paragraph that discussed the liability of police or fire departments and was not capitalized or otherwise prominent. 323 Ga. App. at 135. The court noted that the language was written in the "same small, single space type face as the majority of the contract." *Id.*

Here, unlike the language in the cases Plaintiff cites, the SSA waiver provisions in paragraphs 7 and 14 are communicated in separate paragraphs without confusing or misleading titles and via font that are in all caps, bold print, and underlined to bring the reader's attention to the importance of the provisions. (ECF 75, Exh. 1, p. 2.) Also, the title of the SSA is set in all caps, bold print, and underlined "**AGREEMENT, WAIVER AND RELEASE OF LIABILITY & ASSUMPTION OF RISK**" to warn the reader about the importance and effect of what she is signing. Finally, unlike the cases cited by Plaintiff, Rachel Germon

placed her initials next to each of these critical paragraphs and then signed at the end of the agreement acknowledging that she was "giving up important legal rights." (ECF 75, Exh. 1, p. 3.)   The SSA waiver provisions are thus more akin to the exculpatory language upheld as enforceable in *Imaging System International v. Magnetic Resonance Plus*, 227 Ga. App. 641, 645 (1997), where the Georgia Court of Appeals upheld the enforceability an exculpatory provision because it was written in all capitalized letters, and which otherwise emphasized to the reader what rights were being limited.  *See also 2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894 (2015) (trial court erred in ruling provision was unenforceable where it appears in contract as part of collection of similar paragraphs pertaining to rights of parties); *Imagining Sys. Int'l v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644-45 (1997) (exculpatory clause set in own paragraph with key language capitalized enforceable as written).

Perhaps the most important difference between this case and those relied upon by Plaintiff is that the cases cited by Plaintiff all involved business contracts that were signed long before the issue arose that made the exculpatory provisions relevant and by individuals who were agents of companies as opposed to a person about the engage in a high-risk recreational activity and who is personally affected by the document.  Here, Rachel Germon executed the SSA immediately before she

went on her first solo parachute jump and thus would have been keenly interested in the documents.

Finally, Plaintiff confusingly takes the opposite stance and argues that, instead of failing to emphasize the waiver language clearly and prominently, the SSA provisions suffer from "excessive emphasis", citing *Allstate Insurance Co. v. ADT, LLC.,* 1:15-CV-517-WSD, 2015 WL 5737371, at *5 (N.D. Ga. Sept. 30, 2015).  In *Allstate,* the court found that the critical clauses were "printed in extremely small print and single spaced" and that the surrounding clauses were also in the small, capitalized letters, and thus they were not distinguishable.  *Id.* at *9.   In the SSA, however, only four of the 23 paragraphs contain language that is all caps, bold print, and underlined.  All four of these relate to Rachel Germon's knowing and voluntary assumption of the risks involved in parachuting, and two of the four such paragraphs are the exculpatory waivers at issue.[7]

Although no Georgia case appears to have adjudicated the enforceability of exculpatory clauses in parachute waiver agreements, a review of case law from other jurisdictions reveals that such clauses are universally enforced by courts across the country.  *See, e.g.*, *Paralift, Inc. v. Superior Court,* 23 Cal. App. 4th 748 (1993)

---

[7] The other two emphasized paragraphs are paragraph 9 (assumption of risk) and 23 (agreement that heirs are bound by contract).

(parachute waiver enforced even though it was signed and initialed 3 years before the fatal accident); *Cain v. Cleveland Parachute Training Ctr.*, 9 Ohio App. 3d 27 (1983) (parachute exculpatory waiver enforced);  *Falkner v. Hinckley Parachute Ctr., Inc.*, 178 Ill. App. 3d 597 (1989) (same);  *Scrivener v. Sky's The Limit,* 68 F. Supp. 2d 277 (1999) (same); *Manning v. Brannon*, 956 P. 2d 156 (Okla. App. 1997) (parachute exculpatory contract signed and initialed in 14 places was enforceable). Here, as in these cases, the SSA's waiver provisions alerted Rachel Germon loudly and clearly that parachuting may result in her death and that she was expressly waiving any rights to sue Defendants.

## V.    Defendants Have Asserted a Proper Claim against Donna Germon.

Plaintiff concedes that she has filed this case in two capacities: individually, under Georgia's Wrongful Death Statute as Rachel Germon's surviving parent, and as Administrator of Rachel Germon's estate.  Plaintiff also concedes, and the parties agree, that the exculpatory waivers, if enforceable, will bind Donna Germon with respect to her claims asserted as Administrator.  Plaintiff also acknowledges that Defendants can use the contractual waivers to support their defenses against her in either of her capacities.  The only issue currently in dispute is whether Donna Germon is also bound by the terms of the executed waivers individually as a wrongful death heir of Rachel Germon.

The case cited by Plaintiff in support of her position, *Manning v. Robertson*, 223 Ga. App. 139, 141 (1996), is inapplicable.  In *Manning*, the Court simply held that a party's assertion of indemnity and contribution claims as part of an affirmative defense could in fact be construed as stating viable crossclaims.  223 Ga. App. at 142.  It did not involve the question of available claims against estate administrators and does not help answer where Rachel Germon's waiver of her right to sue Defendants is binding on Plaintiff in her capacity as heir.

Under Georgia law, a wrongful death claim is derivative in nature.  In *Wade v. Watson*, 527 F. Supp. 1049 (N.D. Ga. 1981), *aff'd,* 731 F 2d 890 (11th Cir. 1984), the Court held that because the decedent had executed a release of liability prior to his death, the survivor's wrongful death action was barred, reasoning that "[a]lthough it is true that the action created by the wrongful death statute is different from the cause of action which *Wade* would have possessed had he lived, any defense which would have been good against *Wade* is good against his representatives in a wrongful death action."  *Id.* at 1052 (citing *Thompson v. Watson*, 186 Ga. 396 (1938)).  More recently, in *United Health Services of Georgia, Inc. v. Norton*, 300 Ga. 736 (2017), the Georgia Supreme Court stated:

> This case is controlled by the long-standing precedent that a wrongful death action is wholly derivative of a decedent's right of action…if the deceased, in his lifetime, has done anything that would operate as a bar to a recovery by him of damages to the personal injury, this will operate

equally as a bar in any action by his personal representatives for his death.

*Id.* at 737-38.  These cases make clear that Donna Germon's wrongful death claim as surviving parent of Rachel Germon is derivative and thus tied to and subject to whatever rights Rachel Germon may have waived prior to her death.  Rachel Germon waived her right to sue Defendants for her death from the parachute accident.  Therefore, under Georgia law, Donna Germon is bound by those agreements.  Having breached those agreements by filing this lawsuit, Plaintiff is therefore subject to Defendants' counterclaims for breach of those agreements in both her capacity as administrator for the estate and as surviving heir.

## **CONCLUSION**

For the reasons stated herein, Defendants respectfully request that this Court deny Plaintiff's Motion to Dismiss.

Submitted this 5th day of September, 2023

*/s/ Caitlin L. Amick*
Edward C. Bresee, Jr.
Georgia Bar No. 004820
Caitlin L. Amick
Georgia Bar No. 866013

Mozley, Finlayson & Loggins LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, GA 30338
404.256.0700

mbresee@mfllaw.com
camick@mfllaw.com

                                 LEE MCMILLIAN
                                 Admitted Pro Hac Vice
                                 Texas Bar No. 13800450
                                 LAW OFFICES OF LEE
                                 MCMILLIAN
                                 223 East Maxan Street, Unit 305
                                 Port Isabel, Texas 78678
                                 Tel: (832) 221-4566
                                 Fax: (866) 290-5442
                                 info@iwalkm.com

*Counsel for Defendants Stephen R. Boyd, Sr.; Air Support, Inc. d/b/a Skydive Spaceland Atlanta; S.M.E. Properties, LLC; Desert Sand Aircraft Leasing Co.; Desert Eagle Aviation, Inc. d/b/a Shorts Skyvan DEA, Inc.; Capital Air Park, Inc. d/b/a Skydive Spaceland San Marcos; Performance Plus, Inc. d/b/a Skydive Spaceland Dallas; Drop Zone Management, Inc. d/b/a Skydive Spaceland Clewiston; B&B Aviation, LLC d/b/a Skydive Spaceland Houston*

#4865-2264-5116

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| DONNA GERMON, as Administrator | * | |
| of the Estate of Rachel M. Germon, | * | |
| and as surviving parent of | * | |
| Rachel M. Germon, | * | |
| | * | CIVIL ACTION FILE No. |
| Plaintiff, | * | 4:23-cv-00100-WMR |
| | * | |
| | * | |
| | * | |
| STEPHEN R. BOYD, SR., | * | |
| *et al*. | * | |
| | * | |
| Defendants. | * | |
| | * | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing ***DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND SUPPORTING MEMORANDUM*** using the Court's CM/ECF System, which will automatically send a copy of same to the following counsel of record:

| | |
|---|---|
| Robert H. Snyder, Jr. | Jeremy D. Stallman |
| William D. Ortiz | Stallman Law, LLC |
| Cannella Snyder, LLC | 1834 Independence Square |
| 315 W. Ponce de Leon Ave., Suite 885 | Atlanta, GA 30338 |
| Decatur, GA 30030 | jeremy@stallman.law |
| rob@cannellasnyder.com | |
| will@cannellasnyder.com | *Counsel for Plaintiff* |

26

*Counsel for Plaintiff*

Alan Armstrong
2900 Chamblee Tucker Road, Bldg. 5-350
Atlanta, GA 30341
alan@alanarmstronglaw.com

*Counsel for Defendant Sun Path Products, Inc.*

I further certify that, pursuant to Rule 5.1(C) of the Local Rules of the United States District Court for the Northern District of Georgia, I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

This 5th day of September, 2023.

*/s/ Caitlin L. Amick*
Edward C. Bresee, Jr.
Georgia Bar No. 004820
Caitlin L. Amick
Georgia Bar No. 866013